IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| TAMMY B.,[1] | ) Civil No.: 6:16-cv-02358-JE |
| Plaintiff, | ) OPINION AND ) ORDER |
| v. | ) |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | ) ) |
| Defendant. | ) |

Richard F. McGinty
McGinty & Belcher, PC
P.O. Box 12806
Salem, OR 97309

    Attorney for Plaintiff

Billy J. Williams, U.S. Attorney
Renata Gowie, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204

Ryan Ta Lu
Special Asst. U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221 A
Seattle, WA 98104-7075

    Attorneys for Defendants

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family members.

OPINION AND ORDER – 1

JELDERKS, Magistrate Judge:

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her applications for Disabled Widow's Benefits and Supplemental Security Income (SSI) under the Social Security Act (the Act). Plaintiff requests that the Court remand this action to the Social Security Administration (the Agency) for an award of benefits.

For the reasons set out below, the Commissioner's decision is affirmed.

## Procedural Background

Plaintiff filed applications for Disabled Widow's Benefits, Disability Insurance Benefits (DIB), and SSI on June 14, 2013, alleging she had been disabled since December 31, 1993. After her claim was denied initially and upon reconsideration, Plaintiff requested an administrative hearing.

On October 28, 2015, a hearing was held before Administrative Law Judge (ALJ) Marilyn Mauer. At the hearing Plaintiff amended her disability onset date to May 16, 2013. With the amendment, Plaintiff's DIB claim was dismissed as not meeting the insured status requirements of sections 216(i) and 223 and only Plaintiff's claims for Disabled Widow's Benefits and SSI remained for adjudication. Plaintiff; Plaintiff's mother, EmmaJean Y.; and Leta Berkshire, a vocational expert (VE), testified at the hearing. Plaintiff was represented by counsel.

In a decision dated February 9, 2016, the ALJ found that Plaintiff was not disabled within the meaning of the Act.

On October 25, 2016, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. In the present action, Plaintiff challenges that decision.

## Background

Plaintiff was born in 1963 and was 52 years old at the time of the ALJ's decision. She graduated from high school and appears to have completed between a semester and one year of college. Tr. 67, 244. She has no past relevant work.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 404.1520(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. § 404.1520(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled. If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four. The Commissioner determines whether the claimant is able to perform relevant work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five. 20 C.F.R. § 404.1520(f).

Step Five. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(g)(1).

At Steps One through Four, the burden of proof is on the claimant. *Tackett*, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform

jobs that exist in significant numbers in the national economy. *Id*.

## ALJ's Decision

As a preliminary matter, the ALJ found that Plaintiff last met the insured status requirements on September 30, 1998 and therefore dismissed her DIB claim.

The ALJ noted there was a previous finding that Plaintiff was the unmarried widow of a deceased insured worker and had attained the age of 50. She found that the prescribed period for Widow's Disability Benefits ended on January 31, 2020.

At Step One, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.

At the second step, the ALJ found that Plaintiff had the severe impairment of mild intellectual disability.

At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).

Before proceeding to the fourth step, the ALJ assessed Plaintiff's residual functional capacity, (RFC). She found that Plaintiff retained the functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> The claimant can understand, remember and carry out simple instructions in a setting with no more than occasional public contact and no strict, high-volume production pace. The claimant must avoid concentrated exposure to inhaled irritants.

Tr. 24. In making her determination, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible.

OPINION AND ORDER – 5

At Step Four of the disability analysis, the ALJ found that Plaintiff had no past relevant work.

At the fifth step, the ALJ found that Plaintiff could perform other jobs that existed in significant numbers in the national economy. Based upon testimony from the VE, the ALJ cited janitor, hotel/motel cleaner, and industrial cleaner as representative of the work Plaintiff could perform. In addition, the ALJ made an alternative finding that, with an addition to the RFC that limited Plaintiff to a maximum of six hours standing and walking in each eight-hour workday, work would still be available such as production line solderer, electrical accessories assembler, and marker. Having concluded that Plaintiff could perform other work, the ALJ found that Plaintiff had not been under a disability within the meaning of the Act from December 31, 1993 through the date of her decision.

## **Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claimants bear the initial burden of establishing disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process. *Tackett*, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.

42 U.S.C. § 405(g); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

## Discussion

Plaintiff contends the ALJ erred by failing to find her disabled pursuant to Listing 12.05; improperly rejecting her subjective symptom testimony and lay witness testimony; improperly discounting the medical opinion and evidence submitted by consultative psychological examiner, Dr. David Freed, Ph.D.; and improperly assessing her ability to perform work at a competitive pace.

### I. Listing 12.05C

The Social Security Regulations' "Listing of Impairments" is "designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885(1990). Conditions contained in the Listings are considered so severe that "they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or other jobs." *Lester v. Chater*, 81 F.3d 821, 828 (9th Cir.1995). Listing 12.05 establishes the criteria for intellectual disability.[2] 20 C.F.R. § 404, Subpt. P, App. 1, 12.05. It is different from other mental disorder listings in that it contains an

---

[2] On September 3, 2013, the Social Security Administration replaced the term "mental retardation" with "intellectual disability" in the Listing of Impairments and other appropriate sections of its rules. 78 Fed.Reg. 46499, August 1, 2013.

introductory paragraph with the diagnostic description for intellectual disability and four sets of criteria. 20 C.F.R. § 404, Subpt. P, App. 1, 12.00A. Under Listing 12.05, a claimant must satisfy the diagnostic description and any one of four sets of severity criteria—paragraphs A, B, C, or D. *Id*.[3]

The diagnostic description provides that "intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." *Id*. at 12.05. Paragraph "C," which is at issue here, requires "a valid verbal, performance, or full-scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. § 404, Subpt. P, App. 1, 12.05C; *see also Bowen v. Yuckert*, 482 U.S. 137, 146, (1987). Therefore, a claimant must establish the following three prongs to prove she meets Listing 12.05C: (1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) an IQ score of 60 through 70; and (3) a physical or other mental impairment causing an additional and significant work-related limitation. *Kennedy v. Colvin*, 738 F.3d 1172, 1175-76 (9th Cir. 2013).

The ALJ found that Plaintiff did not meet the first and third prongs of Listing 12.05C. Plaintiff argues that the third prong is met because she had been diagnosed with scoliosis and because consultative examiner Dr. Freed assessed additional psychological conditions of Autism Spectrum Disorder (Provisional), Major Depressive Disorder and

---

[3] On January 17, 2017, significant revisions became effective in the Listings criteria used to evaluate claims involving mental disorders. *Revised Medical Criteria for Evaluating Mental Disorders*, 81 Fed. Reg. 66138-01, 2016 WL 5341732(F.R.). The changes included revisions to Listing 12.05, including the elimination of Listing 12.05C. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (Jan. 17, 2017). Because these changes went into effect after the ALJ's decision here, the Court will review the Commissioner's final decision using the regulations then in effect. *See* 81 Fed. Reg. 66138-01, 2016 WL 5341732, n. 1 (F.R.).

OPINION AND ORDER – 8

Generalized Anxiety Disorder.

The Commissioner asserts that the ALJ considered the diagnoses upon which Plaintiff relies, properly found them to be non-severe, and concluded they did not impose additional or significant work-related limitations such that the third prong of 12.05C was satisfied. The Commissioner contends that Plaintiff has not offered any argument challenging the ALJ's finding that the additional impairments noted above were not severe.

Plaintiff asserts, without support, that the Listing does not require that the impairment also be a "severe impairment." Pl. Brief at p. 6. To the contrary, the regulations clearly set out that under 12.05C,

> we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, <u>i.e., is a "severe" impairment(s)</u>, as defined in §§ 404.1520(c) and 416.920(c). If the additional impairment(s) does not cause limitations that are "severe" as defined in §§ 404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes "an additional and significant work-related limitation of function," even if you are unable to do your past work because of the unique features of that work.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 §12.00A (Aug. 12, 2015)(emphasis added). The ALJ concluded that Plaintiff's only severe impairment was mild intellectual ability. Plaintiff has not challenged the ALJ's finding that any other impairments were nonsevere. The ALJ's conclusion that Plaintiff failed to establish the third prong of Listing 12.05C is supported by substantial evidence. As all prongs must be satisfied, the ALJ did not err in failing to find Plaintiff disabled pursuant to Listing 12.05C.

## II. Plaintiff's Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no

affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

When evaluating a claimant's subjective symptom testimony, an ALJ must consider the entire record, including the claimant's activities of daily living ("ADLs"); the location, duration, frequency, and intensity of the claimant's pain or other symptoms; medications taken and their effectiveness; treatment other than medication; measures other than treatment used to relieve pain or other symptoms; and "other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 404.1529(c); SSR 96-7p; SSR 16-3p. If substantial evidence supports the ALJ's determination, it may be upheld even if some of the reasons cited by the ALJ are erroneous. *Carmickle v. Comm'r of Sec. Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

Here, there was no evidence of malingering and, therefore, the ALJ was required to provide clear and convincing reasons to support her rejection of Plaintiff's statements regarding the severity of her symptoms. The ALJ discounted Plaintiff's subjective symptom allegations as inconsistent with the medical record, inconsistent with her activities of daily living, and inconsistent with her own statements.

Plaintiff testified that she could not work because of asthma, arthritis in her knee, an inability to keep up with her co-workers at her part-time plant nursery job, and problems with her memory. Tr. 52. Plaintiff does not challenge the ALJ's evaluation of her alleged physical impairments and, therefore, only her alleged mental symptoms are at issue here.

The ALJ noted that the treatment record did not fully corroborate Plaintiff's testimony and that objective medical findings were not fully consistent with the degree of impairment alleged by Plaintiff. Tr. 25. Although, an ALJ may not rely solely on a lack of corroborating medical evidence to discount a claimant's subjective allegations, "whether the alleged symptoms are consistent with the medical evidence" is a relevant consideration. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007) (citations omitted). The ALJ pointed to a lack of psychological treatment history, an absence of psychological or cognitive issues in the treatment notes of Plaintiff's primary physician, and consultative examiner Dr. Kruger's finding of a mild intellectual disability but no evidence of a diagnosable psychological impairment. Tr. 25.

Plaintiff argues that the ALJ "cherry picked" the evidence, that her allegations need not be fully corroborated by the medical evidence, and that she need not be "totally incapacitated" in order to support a finding of disability. Pl. Brief at 15-16. However, Plaintiff does not go beyond these cursory arguments or point to evidence in the record that demonstrates that the ALJ's reasoning was invalid. After a thorough review of the record, I conclude that inconsistency between the medical record and Plaintiff's allegations of disabling impairment was a valid reason to discount those allegations.

The ALJ also pointed to inconsistencies between Plaintiff's allegations and her activities of daily living. "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin,* 763 F.3d 1154, 1165 (9th Cir. 2014). Plaintiff reported that she drove herself to work, to the grocery store and to other places, although she may have difficulty finding new places or using new directions. She visited the library "quite a bit" and attended church weekly. Plaintiff prepared her own meals; performed her own household chores; paid her own bills; was able to go for walks and exercise

with family members; exercised three times a week at a gym; found and followed simple cooking recipes from the internet; played guitar and piano; and gardened, sewed and read as hobbies.

Plaintiff argues that the ALJ's reliance on her reported activities was in error because the fact that she can perform some activities is not a valid reason for discounting her credibility if those activities are not inconsistent with disability. Plaintiff also asserts that the ALJ did not find that any of her daily activities could be transferred to the workplace. A claimant's activities of daily living can be used to discredit a claimant in two ways: either the activities can contradict the claimant's other testimony, or the activities can meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639.

Here, the ALJ discounted Plaintiff's subjective symptom allegations because they were in contradiction with her daily activities. The ALJ noted that, despite Plaintiff's allegations that she was precluded from work because of issues with memory and keeping pace with co-workers, Plaintiff had virtually no restrictions in her daily activities. The ALJ specifically cited Plaintiff's ability to pay her own bills, balance her checkbook, perform her plant cutting job at her family's nursery, and find and follow cooking recipes from the internet as inconsistent with her allegations of debilitating mental impairments. The ALJ's rationale here was valid and supported by the record.

The ALJ also discounted Plaintiff's allegations based on inconsistencies within Plaintiff's own statements. The ALJ noted inconsistencies in Plaintiff's reports of how much she worked, the amount of income she had, and her reasons for applying for disability. The ALJ also noted that although Plaintiff reported to an examiner that her mother had died of breast cancer, Plaintiff's mother had testified at the administrative hearing. Tr. 26. These inconsistencies are a

sufficient basis to support the ALJ's credibility finding. *See, Burch v. Barnhart,* 400 F.3d 676, 680 (9th Cir. 2005)(inconsistencies in claimant's testimony can serve as clear and convincing reason for discrediting it).

Plaintiff argues that because her impairments involve "mental retardation" her inconsistent statements must be evaluated in that context. Pl. Brief at 17. Plaintiff also asserts in regard to her statements about her mother's death that "[i]t is hard to find such a contradiction as an indication of credibility when dealing with a mentally retarded claimant." I disagree. A finding regarding a claimant's statements concerning their symptoms does not relate to whether one intends to mislead but is, instead, a determination of whether a witness' testimony is reliable. Social Security Ruling 16-3p provides that "subjective symptom evaluation is not an examination of an individual's character." Thus, in making a subjective symptom determination, an ALJ is evaluating the reliability of the evidence provided. The ALJ here cited numerous inconsistencies in Plaintiff's statements and reasonably concluded that those inconsistencies undermined the degree to which Plaintiff's statements could be relied upon.

The ALJ here provided several clear and convincing reasons for discounting Plaintiff's subjective symptom allegations and her assessment was supported by substantial evidence.

**III. Lay Witness Testimony**

Lay testimony describing a claimant's apparent symptoms and activities is competent evidence which must be considered by an ALJ. *Molina v. Astrue*, 675 F.3d 1104, 1114 (9th Cir. 2012) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1995)). The ALJ must provide "germane" reasons for rejecting such evidence. *Dodrill v. Astrue*, 12 F.3d 915, 919 (9th Cir. 1993).

Plaintiff challenges the ALJ's treatment of lay witness evidence submitted by her father

and mother. Mr. Donald Y., Plaintiff's father, submitted two letters discussing his perceptions of Plaintiff's limitations. Mrs. Emmajean Y., Plaintiff's mother, testified at Plaintiff's administrative hearing. The ALJ gave their statements "little weight," finding they were inconsistent with claimant's own reports of functioning. This was a germane reason for discounting the lay witness evidence. *See, e.g., Carmickle,* 533 F.3d at 1163–64 (inconsistency between claimant's activities and lay witness's statements is germane reason for discrediting the lay witness). The ALJ cited Plaintiff's relatively unlimited ability to perform daily activities and her testimony that she worked five hours a week as inconsistent with Mr. Y's statements that Plaintiff required assistance with "normal life functions" and was working five and a half hours a day five days per week. Tr. 22, 26, 30, 269. The ALJ cited Plaintiff's reported ability to manage her own finances as inconsistent with her mother's testimony that she required help balancing her checkbook. Tr. 63. In contrast, the ALJ found credible Plaintiff's mother's testimony that Plaintiff does well on her own with some help and encouragement. Tr. 30, 65.

After a thorough review of the record, I am satisfied that the ALJ provided germane reasons for discounting the lay witness evidence from Mr. and Mrs. Y.

**IV. Medical Opinion Evidence**

The ALJ is required to consider all medical opinion evidence and is responsible for resolving conflicts and ambiguities in the medical testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). In reviewing an ALJ's decision, the court does not assume the role of fact-finder, but instead determines whether the decision is supported by substantial evidence in light of the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992).

The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Lester,* 81 F.3d at 830.

The opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990). An ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinions of an examining physician, *id.*, and must provide specific and legitimate reasons for rejecting opinions of an examining physician that are contradicted by another physician. *Andrews*, 53 F.3d at 1043. A non-examining physician's opinion "cannot by itself constitute substantial evidence that justifies rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 830–31.

After the administrative hearing, Plaintiff was referred by her attorney to Dr. David M. Freed, Ph.D., who administered a psychological evaluation of Plaintiff in October 2015. Dr. Freed provided a written Psychological Evaluation and mental Functional Assessment Form. Tr. 352-358, 359-360. He indicated his opinion was based on a review of records, client interview and testing.

Dr. Freed diagnosed Plaintiff with Mild Intellectual Disability; Major Depressive Disorder, Recurrent, Moderate; Generalized Anxiety Disorder; and Autism Spectrum Disorder, Level 1 (Provisional). He opined that Plaintiff would struggle to understand social interactions, would have difficulty sustaining an ordinary daily routine, and working in proximity to other people, and her ability to remember work and safety procedures would be impaired. Tr. 356-357. However, Dr. Freed also reported that Plaintiff's functional limitations reflected "an average level of functioning since May 14, 2013." Tr. 352.

On the Functional Assessment Form, Dr. Freed indicated that Plaintiff would have moderate limitations in a number of areas including understanding, remembering, and carrying out detailed instructions; maintaining concentration and attention for extended periods of time;

sustaining an ordinary routine without special supervision; and completing a normal work week without interruptions from psychologically based symptoms. Tr. 359.

The ALJ gave Dr. Freed's opinion "very little weight." She found that his opinion lacked "much objective support" and was inconsistent with the medical record as a whole. The ALJ also found Dr. Freed's opinion to be inconsistent with Plaintiff's daily activities. These were specific and legitimate reasons supported by substantial evidence for discounting Dr. Freed's opinion.

First, the ALJ pointed to substantial evidence in the record that was inconsistent with Dr. Freed's opinion concerning Plaintiff's mood, anxiety and social skill problems exacerbating her symptoms of Intellectual Disability. She noted that the record did not demonstrate that Plaintiff had social or interpersonal problems to the extent opined by Dr. Freed. She pointed to medical evidence documenting that Plaintiff presented as "very pleasant;" with "no mental health signs present;" had normal mood and affect; and that Plaintiff was able to engage in care, attend most of her appointments without accompaniment, and reported no depression or mood issues to her primary treating physician. Tr. 317, 331, 401, 409. The ALJ also noted that there was no indication in Plaintiff's treating physician notes that Plaintiff had experienced a clinical history of "recurrent depressive and anxious symptoms." Tr. 28, 357, 382, 393. Plaintiff's mood and affect were consistently noted as normal. Tr. 341, 344, 401. The inconsistency between Dr. Freed's opinion and the medical record as a whole was a valid and rational reason for discounting the physician's opinion. *See Tommasetti*, 533 F.3d at 1041 (an ALJ may reject a physician's opinion due to inconsistencies with the medical record).

Second, the ALJ reasonably discounted Dr. Freed's opinion as inconsistent with Plaintiff's activities of daily living. S*ee Ghanim*, 763 F.3d at 1162 (an ALJ may reject a physician's opinion due to inconsistencies between the opinion and the plaintiff's reported

activities of daily living). The ALJ noted Plaintiff's work as a plant cutter on her family farm was inconsistent with Dr. Freed's opinion that Plaintiff would have difficulty sustaining a normal routine. Regardless of whether this work could be considered gainful employment, the ALJ reasonably viewed the activity as inconsistent with Dr. Freed's opinion. The ALJ also pointed to Plaintiff's ability to adequately, independently and routinely provide self-care such as cooking, feeding and dressing herself, and managing hygiene. The ALJ rationally interpreted the record and determined that Plaintiff's reported activities of daily living conflicted with Dr. Freed's opinion regarding her limitations.

Because the ALJ provided specific and legitimate reasons for discounting Dr. Freed's opinion, any error in providing invalid reasons was harmless. *See Carmickle,* 533 F.3d at 1162 (ALJ's reference to invalid reason for discounting evidence was harmless error given that ultimate determination was supported by valid reasons). Plaintiff's cursory arguments offer an alternative interpretation of the evidence; however, the ALJ's interpretation was rational and supported by the record. Accordingly, this Court will not substitute its judgment for that of the Commissioner. *Daley v. Berryhill*, 728 F. App'x 691, 694 (9th Cir. 2018)("Because the ALJ's interpretation is rational, even if an alternative interpretation is available, this does not justify disturbing the decision.")(citing *Ryan v. Comm'r Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

**V. Step Five Findings**

Plaintiff asserts the ALJ made several errors at Step Five of the evaluation process. First, Plaintiff asserts that the RFC limitation to "no strict, high volume production pace" exceeds her ability in light of two medical opinions and the ALJ's own Step Three determination that Plaintiff had moderate limitations with concentration, persistence and pace. She argues that

based on these medical reports and the ALJ's findings, she would be unable to consistently perform even at a "low volume productions pace." Pl. Brief at 8. Neither Dr. Maughan nor Dr. Kruger, the two physicians cited by Plaintiff, assessed the degree of functional limitations Plaintiff asserts. Dr. Maughan assessed no functional limitation related to pace and Dr. Kruger noted that Plaintiff would be able to perform simple, routine tasks adequately, independently and within an appropriate period of time although her performance would be slow. Tr. 334, 339.

Although several Ninth Circuit opinions suggest that a limitation to "simple, repetitive work" on its own does not adequately account for limitations with concentration, persistence or pace; *See e.g. Brink v. Comm'r Soc. Sec. Admin.*, 343 Fed.Appx. 211, 212 (9th Cir. 2009); *Lubin v. Comm'r of Soc. Sec. Admin.*, 507 Fed.Appx. 709, 712 (9th Cir. 2013); the ALJ here did include additional limitations relevant to pace.[4] Plaintiff has offered no authority that the RFC limitation to "no strict, high volume production pace" was inadequate to reflect the restrictions supported by the medical record.

Plaintiff also asserts that her RFC and the hypothetical presented to the VE conflicted with the Dictionary of Occupational Titles (DOT). However, Plaintiff concedes that the DOT definitions for the six occupations the ALJ found she could perform do not specifically discuss pace. Plaintiff's argument, as far as this Court can discern, is that the ALJ's functional limitation to no strict, high volume production pace "implies an 'average' pace implication . . .;" Pl. Brief at 9, and the ALJ failed to resolve the conflict between this implicit pace limitation in the RFC and the lack of any pace discussion in the DOT.

When there is an "apparent unresolved conflict" between the VE evidence and the DOT, it is the duty of the ALJ to "determine whether the expert's testimony deviates from the [DOT]

---

[4] Although *Brink and Lubin* are unpublished decisions by the Ninth Circuit, and are not binding, they may be indicative of how the court would rule in a published opinion. *Saucedo v. Colvin*, 2014 WL 4631225, at *17 (D. Or. Sept. 15, 2014).

and whether there is a reasonable explanation for any deviation." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). However, for the difference "to be fairly characterized as a conflict, it must be obvious or apparent [and] at odds with the [DOT]'s listing of job requirements that are essential, integral, or expected." *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016). Plaintiff's assertions of what may be "implicit" in either her RFC limitations or the DOT definitions, without more, is inadequate to create a conflict that required resolution by the ALJ.

Finally, Plaintiff asserts that her RFC inadequately accounted for her limitations. As discussed above, the ALJ's interpretation of the evidence here was reasonable and supported by the record. The ALJ is required to include in the RFC and any hypothetical presented to the VE only those limitations which are supported by substantial evidence. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ fulfilled that requirement in this case and thus her findings at Step Five will not be disturbed.

## **Conclusion**

For the reasons set forth above, the Commissioner's decision is AFFIRMED and this action is DISMISSED.

DATED this 11th day of April, 2019.

                                            /s/ John Jelderks
                                            John Jelderks
                                            U.S. Magistrate Judge